IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BASHIR SHEIKH, M.D.,

                      Plaintiff,                    OPINION AND ORDER

    v.

                                                           11-cv-1-wmc

GRANT REGIONAL HEALTH CENTER,

                      Defendant.

---

The court previously granted defendant Grant Regional Health Center's ("GRHC") motion for summary judgment on all of plaintiff Bashir Sheikh's federal law claims, while declining to exercise supplemental jurisdiction over Sheikh's state law claims and GRHC's state law counterclaim. (Dkt. #119.) In response, Sheikh moved to continue jurisdiction over the state law claims based on diversity jurisdiction (dkt. #122) and subsequently demonstrated complete diversity existed at the time this action was commenced (dkt. ##127-128). Accordingly, on November 5, 2013, the court vacated the dismissal of Sheikh's state law claims and reopened this case.

Sheikh asserted state law claims for breach of contract (count II), defamation *per se* (count III), tortious interference with a contract (count IV), tortious interference with a prospective contract (count V), intentional infliction of emotional distress (count VI), and negligent infliction of emotional distress (count VII). (2d Am. Compl. (dkt. #49).) GRHC asserts a counterclaim for breach of contract due to Sheikh's failure to repay a $50,000 loan. (Counterclaim (dkt. #52).) In this opinion and order, the court takes up defendant's pending motion for summary judgment on those state law claims (dkt. #66),

incorporating by reference the facts laid out in the court's opinion and order granting defendant's motion to dismiss plaintiff's federal claims. Additional undisputed facts specific to the state law claims are described in this opinion where material. Based on all of these undisputed facts, the court will now grant defendant's motion in its entirety for the reasons that follow.

OPINION

I. Defendant's Motion for Summary Judgment on Plaintiff's Claims

A. HCIQA Immunity for Tort Claims

In his second amended complaint, plaintiff asserts four tort claims all of which are premised on defendant's submission of an adverse action report to the National Practitioner Data Bank ("NPDB"). (2d Am. Compl. (dkt. #49) ¶ 31 (defamation claim premised on "reports to the [NPDB] that Defendant knew to be false"); ¶¶ 34-35, 39-40 (tortious interference with contract claim and tortious interference with prospective contract claim both based on prospective employer's mandatory review of NPDB report)[1]; ¶ 45 (intentional infliction of emotional distress claim premised on GRHC's reporting of false information to the NDPB); ¶ 49 (negligent infliction of emotion distress claim premised on GRHC's failure to "provide accurate and truth information" to the NDPB).

---

[1] In this opinion, the court will treat these two claims as one claim. In the first claim, plaintiff alleges that he had entered into employment contracts with various hospitals which were rescinded because of the employer's review of the NPDB report; in the second claim, plaintiff alleges that he was in the final stages of the hiring process when the prospective employment contracts were cancelled. Other than that distinction, the claims are exactly the same.

Defendant moves for summary judgment on all four claims, asserting that it is entitled to immunity for this very same conduct under a provision of the Health Care Quality Improvement Act of 1986 ("HCQIA"), 41 U.S.C. § 11101 *et seq.* Indeed, the HCQIA *requires* a report be filed with the NPDB when a "health care entity . . . takes a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days." 42 U.S.C. § 11133(a)(1)(A); *see also* 45 C.F.R. § 60.12 (setting forth requirements for reporting adverse actions taken against clinical privileges). Consistent with that requirement, GRHC submitted an adverse action report on July 13, 2010, indicating that Sheikh's clinical privileges had been permanently revoked on June 29, 2010, and listed the "basis for action" as "disruptive conduct" and "substandard or inadequate care." (Affidavit of Jennifer Rutkowski ("Rutkowski Aff."), Ex. 20 (dkt. #70-20).) The report also included a description of the (1) timetable of actions taken by GRHC with respect to the revocation of plaintiff's admitting privileges and (2) the reasons for that action. As for the reasons, GRHC broadly noted "a series of instances of disruptive conduct and substandard and inadequate care," and then provides specific examples in support of each reason. (*Id.* at p.2.)

Consistent with defendant's motion, 42 U.S.C. § 11137(c) provides in pertinent part:

> (c) Relief from liability for reporting
>
> No person or entity . . . shall be held liable in any civil action with respect to any report made under this subchapter . . . without knowledge of the falsity of the information contained in the report.

*See also* 45 C.F.R. § 60.22.[2] "Thus, immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false." *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1334 (10th Cir. 1996).

Importantly, the determination of whether the report was "false" does *not* turn on "whether the underlying merits of the reported action were properly determined. Instead, the court's role is to evaluate whether the report itself accurately reflected the action taken." *Hooda*, 2013 WL 2161821, at *6 (quoting *Kunajukr v. Lawrence & Mem'l Hosp., Inc.*, No. 3:05-CV-1813 (JCH), 2009 WL 651984, at *23 (D. Conn. Jan. 12, 2009)). Stated another way, Sheikh's contention that defendant's reasons for revoking his admitting privileges were pretextual (or otherwise not reflective of the actual circumstances surrounding his employment) is irrelevant to the determination of whether the report itself was false for purposes of § 11137(c) immunity. *Hooda*, 2013 WL 2161821, at *6-7 (explaining that in determining immunity "the outcome of the investigation" and plaintiff's contention that the report was "filed maliciously, in bad faith, or in retaliation for his criticism of the quality of care" are all irrelevant); *see also Brown*, 101 F.3d at 1334 (concluding that a reasonable jury could find that the report did

---

[2] In response, plaintiff cites to a different provision of the HCQIA concerning immunity for peer review participants and the requirements for such immunity. (Pl.'s Opp'n (dkt. #85) 22 (discussing 42 U.S.C. §§ 11111(a)1, 11112(a)).) Plaintiff's argument misses the mark since his tort claims as plead are not premised on GRHC's peer review process, but rather on GRHC's reporting to the NPDB. *See, e.g.*, *Hooda v. W.C.A. Serv. Corp.*, No. 11-CV-504-A, 2013 WL 2161821, at *5 (W.D.N.Y. May 17, 2013) (describing "two separate immunity provisions" under the HCQIA). As such, the court's focus in on whether GRHC is entitled to immunity under § 11137(c).

not accurately reflect the reason for the adverse action where the report listed "negligence/incompetence/malpractice" as the reasons for the adverse action but "the record reveals neither the review panel nor the hospital's Board of Trustees ever found Dr. Brown negligent, incompetent or guilty of malpractice. Rather, the review panel merely determined Dr. Brown breached her agreement to obtain appropriate consultation.").

The minutes of the September 25, 2009, GRHC Medical Executive Committee contains a summary of the incidents and complaints concerning plaintiff. Specifically, these minutes discuss concerns about Sheikh's (1) behavior, in particular his treatment of colleagues, (2) inappropriate admission decisions, (3) inappropriate treatment (including specific examples included in the NPDB report), and (4) unwillingness to change in response to feedback. (Affidavit of Erin Huebschman, M.D., Ex. 7 (dkt. #69-7).) These are the same reasons provided in the NPDB report for GRHC's revocation of Sheik's privileges. Consistent with the NPDB report, the minutes also reveal that the Committee voted unanimously to revoke Sheikh's staff appointment and clinical privileges. (*Id.* at 3.) Finally, the records shows the Board accepted the Committee's recommendation on June 29, 2010, revoking Sheikh's appointment and privileges. (Affidavit of Nicole Clapp ("Clapp Aff."), Ex. 17 (dkt. #71-17) 6.) Based on this undisputed evidence, the court finds that a reasonable jury could neither conclude that the report of what happened (as opposed to what Sheik maintains should have happened) was false, nor that the reporting party knew it was false.

While not discussed by either party, "HCQIA immunity is limited to suits for damages; there is no immunity from suits seeking injunctive or declaratory relief." *Sugarbaker v. SMM Health Care*, 190 F.3d 905, 918 (8th Cir. 1999). In the operative complaint, Sheikh seeks an injunction "directing the National Practitioner Data Bank to remove publication of Defendant's report." (2d Am. Compl. (dkt. #49) p.11.) The court, however, has no authority to enter an injunction requiring a non-party government agency to remove GRHC's adverse action report from the NPDP. As far as the court can discern, plaintiff's exclusive avenue for such relief is requesting a review of a disputed report by the Secretary of the Department of Health and Human Services. *See* 45 C.F.R. § 60.21(c)(1) ("The subject *must* request, in the format as determined by the Secretary, that the Secretary review the report for accuracy." (emphasis added)); *see also Hooda*, 2013 WL 2161821, at *10. If the subject of an adverse action report is dissatisfied with the Secretary's finding, he or she could then seek review of the decision in court pursuant to the Administrative Procedure Act, 5 U.S.C. § 501 *et seq*. *See e.g., Leal v. Secretary*, 620 F.3d 1280 (11th Cir. 2010).

The adverse action report submitted by defendant indicates that plaintiff "disputed" the report and submitted a lengthy statement explaining his version of the facts surrounding GRHC's revocation of his privileges. (Rutkowski Aff., Ex. 20 (dkt. #70-20) pp.2-3.) *See also* 45 C.F.R. § 60.21 (describing process for disputing the accuracy of NPDB information). The record does not reveal, however, whether Sheikh subsequently sought review of the report and, if so, whether he filed a lawsuit against the Secretary seeking review of her determination. Regardless, the Secretary is not a party to

6

this action, making injunctive relief requiring the Department of Health and Human Services to remove the report from the NPDB unavailable.

Accordingly, the court will grant defendant's motion for summary judgment on all of plaintiff's tort law claims arising out of GRHC's filing a report with the NPDB (causes of action III-VII in the Second Amended Complaint), finding defendant immune from claims seeking damages under the HCQIA. The court will also dismiss Sheikh's request for injunctive relief against the NPDB, finding that plaintiff has failed to assert a cognizable claim for such relief.[3]

### B. Breach of Contract Claim

Sheikh also asserts a breach of contract claim, on the basis that GRHC breached its employment contract with him by: "terminating Plaintiff without cause; not following the bargained for procedures and avenues for investigation of complaints; and by fostering insubordination and disrespect including harassment and discrimination." (2d Am. Compl. (dkt. #49) ¶ 27.) GRHC contends that summary judgment is warranted as to all three alleged breaches.

"[D]amages for breach of contract require [plaintiff] to prove the contract, the breach and the amount of damages that resulted from the breach." *Admanco, Inc. v. 700 Stanton Drive, LLC*, 2010 WI 76, ¶ 56, 326 Wis. 2d 586, 786 N.W.2d 759. Absent a contract for employment, the at-will employment doctrine "generally allows an employer

---

[3] Defendants raise other grounds for dismissal of these tort claims -- some, if not all, of which appear to have merit -- but the court need not consider these arguments given its finding that GRHC is entitled to immunity under the HCQIA.

to discharge an employee for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 663, 571 N.W.2d 393, 396 (1997) (internal citation and quotation marks omitted). Here, however, there is no dispute that a contract governed Sheikh's employment with GRHC. As such, his claim hinges -- at least at the summary judgment stage -- on whether GRHC breached that contract.

The employment contract was signed by Sheikh on May 19, 2009, and GRHC's CEO Nicole Clapp on May 27, 2009. (Clapp Aff., Ex. 4 (dkt. #71-4).) The effective date of the contract was August 1, 2009, with a termination date of July 31, 2011. (*Id.* at ¶ 4.) Material to the present motion, the contract defines grounds for "Immediate Termination" (¶ 5); "Termination for Cause" (¶ 6); and "Termination by Either Party Without Cause" (¶ 7).

As an initial matter, GRHC argues that it did not breach the employment contract because it complied with the section of the contract allowing termination without cause. This section provides in pertinent part:

> Either party may terminate this Agreement without cause by providing at least six month's advance written notice to the other party. During the six months, the parties shall continue to operate under and according to the terms of this Agreement.

(*Id.* at ¶ 7.1.) There is no dispute that Clapp sent a letter to Sheikh on August, 31, 2009, informing him of his termination without cause and citing Article 7.1 of the employment contract. (Clapp Aff., Ex. 13 (dkt. #71-13).) While this letter appears to comply with ¶

8

7.1, GRHC did not terminate his employment six months later, but rather terminated Sheikh's employment three *days* later on September 3, 2009.

In a September 3rd letter explaining the basis for termination, Clapp cites to two provisions: (1) ¶ 5.4, which allows for immediate termination "[a]t GRHC's election, upon Physician's loss, suspension or other restriction of active medical staff membership, privileges, or other qualifications necessary for medical practice" and (2) ¶ 6.1, which allows for termination "for cause after 30 day's written notice" for "[s]erious misconduct" (among other bases).  (Clapp Aff., Ex. 15 (dkt. #71-15); *id.*, Ex. 4 (dkt. #71-4) ¶¶ 5.4, 6.1.)  The September 3rd letter also cites to Sheikh's "insubordination and unprofessional conduct/behavior; [and] refusal to comply with your performance improvement plan" as "serious misconduct" under the employment agreement.  (Clapp Aff., Ex. 15 (dkt. #71-15).)

Since termination for cause under ¶ 6.1 requires 30 day's written notice and Sheikh's employment was terminated effective the same day, this provision is also unavailable to GRHC.  This leaves immediate termination under ¶ 5.4, which does not require advanced written notice.  In a letter dated September 1, 2009, Clapp informed Sheikh that his medical staff privileges were suspended immediately.  (Clapp Aff., Ex. 14 (dkt. #71-14).)  As such, the undisputed record demonstrates that GRHC's termination of Sheikh's employment on September 3, 2009, was permitted by ¶ 5.4, at least absent a

claim that GRHC acted in breach of its duty of good faith in suspending Sheikh's staff privileges.[4]

Alternatively, Sheikh alleges that GRHC violated his employment contract by "not following the bargained for procedures and avenues for investigation of complaints." (2d Am. Compl. (dkt. #49) ¶ 27.) Paragraph 5 of the employment contract does not set forth a grievance process, although paragraph 6.1 does provide Sheikh "the opportunity to file a formal grievance if the Physician feels that he has been treated unfairly in the application of section 6.1.a-6.1.d." (Clapp Aff., Ex. 4 (dkt. #71-4) ¶ 6.1.) Assuming Sheikh's termination fell within this provision, there is no indication in the record that Sheikh filed such a grievance. (Def.'s PFOFs. (dkt. #68) ¶ 15.)

In response to GRHC's motion, plaintiff also contends that GRHC failed to follow its own bylaws in suspending his medical staff privileges, which can form the basis of an employment contract. (Pl.'s Opp'n (dkt. #85) 32.) Unfortunately for plaintiff, he did not plead a breach of contract claim based on GRHC's alleged failure to comply with its bylaws. Moreover, the employment contract upon which he relies does not reference the bylaws, nor has plaintiff explained or put forth evidence demonstrating how his September 1, 2013, suspension of his privileges violated GRHC's bylaws.

---

[4] Typically the court might give more leeway to a *pro se* litigant, but plaintiff was represented by counsel when he filed his second amended complaint -- the operative pleading. At summary judgment, the court will not read in new claims. Even if the court were to impute a breach of contract claim based on the suspension of Sheikh's privileges, Sheikh has not come forward with any facts which would support such a claim other than his conclusory statement that his privileges were suspended "without any reasonable basis and without diligence to know facts from plaintiff." (Affidavit of Bashir Sheikh, M.D. (dkt. #93) ¶ 101.)

Finally, Sheikh contends that GRHC breached his employment contract "by fostering insubordination and disrespect including harassment and discrimination." (2d Am. Compl. (dkt. #49) ¶ 27.)  This claim appears limited to Sheikh's claims of discrimination based on his race, national origin and religion, which the court has already dismissed because of Sheikh's failure to put forth sufficient evidence from which a reasonable jury could find discriminatory intent.  As such, Sheikh's breach of contract claim premised on discrimination similarly fails.

Ultimately, plaintiff has failed to come forward with admissible evidence creating a genuine issue of material fact in response to defendant's motion for summary judgment on his breach of contract claim.  Accordingly, the court will grant judgment in favor of defendant on that claim (second cause of action in second amended complaint) as well.

## II. Defendant's Motion for Summary Judgment on Defendant's Counter Claim

GRHC also moves for summary judgment on its counter claim for breach of contract.  GRHC's breach of contract claim is premised on a loan agreement signed by Sheikh on May 19 and by GRHC on May 27, 2009.  (Clapp Aff., Ex. 5 (dkt. #71-5).)  The parties executed a commensurate promissory note on those same dates.  (*Id.*, Ex. 6 (dkt. #71-6).)

The loan agreement provides in pertinent part that GRHC will advance Sheikh $50,000.  (Clapp Aff., Ex. 5 (dkt. #71-5) ¶ 3.)  The agreement further provides:

> During the term of this contract, as long as [Sheikh] is both (i) in compliance with all provisions of this agreement, and (ii) maintains a full-time medical practice in Lancaster, [GRHC] agrees that it will forgive at the end of each twelve month period, an amount equal to fifty percent (50%) of the

11

> total amount to be advanced and any interest accrued thereon.

(*Id.* at ¶ 5.) The agreement also provides for repayment in case of default:

> In the event [Sheikh] either (i) is in default of any provision of this agreement, or (ii) fails to maintain a full-time medical practice in Lancaster, [Sheikh] agrees to repay to [GRHC] on the thirtieth (30th) day following [GRHC's] determination that [Sheikh] is in default, or has failed to maintain a full-time medical practice in Lancaster, an amount equal to all ADVANCES, less any amounts forgiven under section 5, plus applicable interest. Interest shall accrue from the date of each advance at the rate per annum of five percent (5%).

(*Id.* at ¶ 6.)

At some point, GRHC provided Sheikh with the full $50,000 advance. After his employment was terminated, GRHC demanded through legal counsel that Sheikh perform his obligation under the loan agreement and repay all principal and interest. (Clapp Aff. (dkt. #71) ¶ 30.) To date, Sheikh has not repaid any portion of the principal, nor any interest accrued on the principal. (*Id.* at ¶ 31.)

In response to GRHC's motion, Sheikh concedes the existence of the loan agreement, his receipt of $50,000, and his failure to repay that amount plus interest. (Pl.'s Opp'n (dkt. #85) 32-33.) Instead, plaintiff argues that GRHC "made performance by Dr. Sheikh impossible" because of its termination of his employment, thus making it impossible for him to continue to practice medicine in the area. (*Id.* at 32.)

Under Wisconsin law, performance under a contract may be excused if "performance becomes impossible due to facts existing when the contract was made, which the non-performing party did not know and had no reason to know." *Solowicz v. Forward Geneva Nat., LLC*, 2010 WI 20, ¶ 42, 323 Wis. 2d 556, 780 N.W.2d 111 (citing

12

*Estate of Zellmer v. Sharlein*, 1 Wis. 2d 46, 49, 82 N.W.2d 891 (1957)); *see also* WIS-JI Civil 3062 ("If performance of a contract is possible only if a certain state of facts continues to exist, then a cessation or termination of the state of facts which makes performance impossible will excuse failure to perform. But if performance becomes impossible by reason of contingencies which should have been foreseen by a party, then such party is not excused from the duty to perform.").

Here, Sheikh executed an employment contract with express provisions for termination of his employment on the same day he signed the loan agreement. *See Harris v. Metro. Mall*, 112 Wis. 2d 487, 496, 334 N.W.2d 519, 523 (1983) ("The general rule is that instruments executed at the same time between the same contracting parties in the course of the same transaction will be construed together." (quoting *Wipfli v. Bever*, 37 Wis. 2d 324, 326, 155 N.W.2d 71 (1967)). Accordingly, he knew -- or, at least, should have known -- that his employment could be terminated by GRHC. No reasonable jury, therefore, could find that Sheikh's inability to pay back the advanced amount was due to facts which he did not know and had no reason to know. In other words, even if GRHC's termination of his employment rendered his performance under the terms of the loan agreement "impossible," it was a contingency that Sheikh should have foreseen and does not excuse his performance under Wisconsin law.

Accordingly, the court finds that the undisputed record demonstrates that Sheikh breached the loan agreement by failing to repay the $50,000 principal payment and interest accruing at 5% per annum. The record does not reveal when the $50,000 payment was made, nor does the record contain the letter from GRHC's counsel

demanding repayment, the date of which may be relevant to determining the amount due.  Further, the loan agreement also provides that Sheikh will "repay [GRHC's] costs and other expenses, including reasonable attorney's fees, incurred in any legal action or negotiations to enforce the provisions of this Agreement."  (Clapp Aff., Ex. 5 (dkt. #71-5) ¶ 8.)  As such, the court will require defendant to submit a proposed judgment on its counterclaim on or before January 16, 2014, with supporting documentation.  Plaintiff may file any objection to the proposed judgment on or before January 30, 2014, with any opposing documentation.

## ORDER

IT IS ORDERED that:

1) Defendant Grant Regional Health Center's motion for summary judgment (dkt. #66) is GRANTED with respect to plaintiff Bashir Sheikh's state law claims (causes of action II-VII of the second amended complaint) and defendant's breach of contract counterclaim; and

2) Consistent with the opinion above, defendant shall file a proposed judgment and supporting materials on its counterclaim on or before January 16, 2014; plaintiff's opposition, if any, is due on or before January 30, 2014.

Entered this 2nd day of January, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge